IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER PILARSKI, individually and on behalf of similarly situated persons, | ) ) ) | Case No. 17-cv-08659 |
| | ) | Hon. Rebecca R. Pallmeyer |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| RENT RECOVER OF BETTER NOI LLC, later incorporated as RENT RECOVER, LLC, and BETTERNOI, LLC, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

**I.      Rent Recover does not Rebut that Plaintiff is Entitled to Summary Judgment on the Threshold Elements of Establishing a Claim under the FDCPA and the Michigan Occupational Code**

Rent Recover does not dispute that Plaintiff has established the three threshold elements under the FDCPA that: :  (1) Plaintiff is a consumer within the meaning given in the statute; (2) Plaintiff's debt arises out of a transaction entered primarily for personal, family, or household purposes; and (3) that Defendant Rent Recover of Better NOI LLC who was collecting the debt is a "debt collector" under the Act.  Likewise, Rent Recover does not argue to the contrary that it is subject to the Michigan Occupational Code.  Therefore, this Court should find for Plaintiff that Rent Recover is subject to the FDCPA and MOC.

**II.     Rent Recover of Better NOI Violated the FDCPA and MOC (Class Claim) when Stating in the Subject Form Letter as "Due" 7 % Interest and Its Interpretation of the Usury Act was Unreasonable**

Defendant's reliance on Michigan's Usury Act, MCL 438.31[1], to apply 7% interest on Plaintiff's debt, is incorrect and was not a reasonable reading of Michigan's law, as set forth here and further discussed in reply to Defendant's *bona fide* error defense asserted.

First as found by this Court, Michigan's Usury Statute is a defense to a claim of interest, not a statute that provides for monetary damages and denied Rent Recover's Rule 12(b)(6) Motion to Dismiss. Likewise, this Court should reject Rent Recover's rehashed arguments presented here. It was simply an unreasonable reading to take a defense to a contract and apply it as a right to add 7% interest under Plaintiff's lease, or into leases that have no mention of interest whatsoever. *See e.g.* (Exhibit A, Toache Dep. Ex. 14); *see* (Exhibit B, Toache Dep. Tr. 32:1-33:6).

Second, the Michigan Usury Statute is not found within in the landlord – tenant context. In Michigan, the relationship between a landlord and a tenant is heavily regulated. *See* Landlord and Tenant Relationships, MCL 554.601 *et seq.*, Summary Proceedings to Recover Possession of Premises, MCL 600.5701 *et. seq.*, Michigan Truth in Renting Act, MCL 554.631 *et. seq.* This heavily regulated area is more than likely why, as Defendant points out, there has never before been a challenge attempting to apply the Michigan Usury Statute in the landlord-tenant context.

A landlord is clearly not a "lender" and Defendant cites no cases to support this position.[2] Notably, a landlord gives a right of entry upon real property to the tenant without transferring their ownership right to the tenant, whereas a "lender" who lends money thereby transferring that

---

[1] The Act's proper name is "Interest Rates Act 326 of 1966" and its popular name is "Usury Act". http://www.legislature.mi.gov/(S(axe1k0g442wohqagwjmvk3tv))/mileg.aspx?page=getObject&objectName=mcl-Act-326-of-1966.

[2] If Defendant's landlord client is a "lender" as a matter of law, it would be an unlicensed lender engaged in the commercial practice of lending, then Plaintiff requests this Court leave to amend the Complaint to bring in the landlord to assert class violations of the Truth in Lending Act and Dodd-Frank.

ownership right to the money to the borrower in return for payments towards the principal and interest for the loss of the use of their money. *See Mich. Pipe & Valve-Lansing, Inc. v. Hebeler Enters.*, 292 Mich. App. 479, 490 (Mich. App. 2011) (*quoting* Black's Law Dictionary (7th ed)) ("Interest is '[t]he compensation fixed by agreement or allowed by law for the use or detention of money, or for the loss of money by one who is entitled to its use; [especially], the amount owed to a lender in return for the use of borrowed money.'"). Furthermore, a landlord, unlike a lender, can protect themselves from the loss of rent by adding that risk of nonpayment into the amount of monthly rent, and in Michigan landlords are allowed to require the tenant to pay in advance a security deposit in an amount "not [to] exceed 1 ½ months' rent." MCL 554.602.

Third, the section in Plaintiff's lease, section 1, is a standalone paragraph at the end of the Lease, "1. COSTS" which provides in its entirety:

> COSTS. Lessee agrees to be responsible for any costs of collection allowed by Michigan Law should collection and/or summary proceedings be initiated to collect delinquent amounts owing under this lease. If Lessee moves out owing any sums to Providence at Harbour Club, it is agreed that the maximum amount of interest allowed by Michigan law shall be added on from the date of the Lessee's moving out. Court costs are assessed the day the case is filed.

(SMF, Ex. I, PageID #:384).

Notably, the title of the section's title is "COSTS" and it expressly states that, "Court costs are assessed the day the case is filed." (SMF, Ex. I, PageID #:384). A title may be considered as an indication of Congressional intent insofar as it 'sheds light' on some ambiguous word or phrase in the statute. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 483, 121 S. Ct. 903, 149 L. Ed. 2d 1 (2001), and thus the remedies in this "COSTS" section refer to litigation. Furthermore given the location of this provision in Plaintiff's lease and the plain text identifying a condition precedent, "collection . . . proceedings", a lawsuit, and/or "summary proceedings", which under Michigan state law, MCL 600.5701(a), "means a civil action to recover possession of premises

3

and to obtain ancillary relief as provided by this chapter and by court rules adopted in connection therewith" and Michigan Court Rule 4.201 "Summary Proceedings to Recover Possession of Premises", as the only reasonable reading of the provision is that the "interest" referenced are Michigan's pre and post judgment rates which change every six months. MCL 600.6013(7), (8).

Fourth it was not Plaintiff's landlord who added the 7% Interest amount at the time Plaintiff moved out of the apartment he was renting, it was Rent Recover who unilaterally made the decision to start adding 7% Interest from the date the file was placed with Rent Recover. (Exhibit B, Toache Dep. Tr. 57:3-16). Furthermore, it is unknown anybody at Rent Recovery actually read Plaintiff's lease or the lease of any other proposed class member prior to the subject form letter was sent out. (Id. Dep. Tr. 39:8-16); *c.f.* (Id. Dep. Tr. 71:10-23) (noting that Rent Recover "don't necessarily have that manpower" to enter into the collector's notes whether a letter was returned.). Notably the 7% interest rate was added to leases that have no mention of interest whatsoever. *See e.g.* (Exhibit A attached hereto, Toache Dep. Ex. 14).

Fifth, the ACA State Interest Rates publication relied upon by Rent Recover states in pertinent part, "[t]his information is provided only as a guide and is not intended to be, nor is it, legal advice", (Exhibit C, ACA SearchPoint, State Interest Rates, p. 2 (June 30, 2017)), and:

> SearchPoint is a trademark of ACA International. Any content contained in this SearchPoint ('Content') is presented for educational and general reference purposes only. ACA International ('ACA') provides this Content as a courtesy to be used for informational purposes only. ACA does not represent or warrant that the Content is accurate, complete or current for any specific or particular purpose or application. This Content is not intended to serve as legal or other advice and should not replace the advice of your own legal counsel. ACA is the sole owner of the Content and all the associated copyrights. ACA hereby grants a limited license to the Content solely in accordance with the copyright policy provided at www.acainternational.org. By using the Content in any way, whether or not authorized, the user assumes all risk and hereby releases ACA from any liability associated with the Content.

(Id., p. 50).

Sixth, Rent Recover raises a commonality/typicality argument that would have been and was addressed in opposition to Plaintiff's motion for class certification. Notably, Rent Recover overlooks the substance of its corporate representative's deposition:

> A. They did vary, but specifically we didn't have a lot of clients. We had a lot of debtors from those clients. ***So their lease agreements were pretty standard in what they used***.
> Q. Okay. Would that be true for the leases over the years for the Michigan clients; let's say, for instance, you have a Michigan client that you had from 2010. Is it possible that the lease changed throughout the course of your representation of that client?
> A. I don't recall. Looking back though, they seem pretty formed. ***They're a standard lease agreement.***

(Def. SMF Ex. J, Toache Dep. Tr. 86:9-21) (emphasis added).

Rent Recover does not dispute that the leases for each landlord respectively were the same "standard lease agreement" and that it only found one landlord who expressly added in 7% interest in its form leases, a landlord whose former tenants are expressly excluded proposed class definition. *See* (Doc. 48, PageID #:306) ("the Court can modify the proposed class definition and certify a class that expressly excludes persons with leases from Pavilion Apartments Limited Partnership[.]").

Therefore, for these reasons above and in his opening motion, Plaintiff requests this Honorable Court to find that Rent Recover violated the FDCPA and MOC, and that as for the purpose of the MOC, that it willfully violated the Act's protections as a matter of law.

**II.     Rent Recover Asserted Affirmative Defenses**

  A.   **Statute of Limitations Defense**

Rent Recover has not raised a single fact or legal argument to support its first affirmative defense, "Statute of Limitations" Defense. Therefore, this Court should grant Plaintiff's motion as to this frivolously raised defense.

B. *Bona Fide* Error Defenses

i. "Due" Interest at 7% Annum (Class Claim)

"[A] defendant can invoke the bona fide error defense only if it claims it made an error of fact, not an error of law." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349 (7th Cir. 2018) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010)); *Phillips v. Amana Collection Services*, 1992 U.S. Dist. LEXIS 13558 * 18, 1992 WL 227839 (W.D.N.Y. Aug. 25, 1992) (citing *Pipiles v. Credit Bureau of Lockport, Inc*., 886 F.2d 22, 27 (2d Cir. 1989) ("Mistake of law, however, is insufficient to establish a bona fide error defense, even where the defendant has relied on advice of counsel"). Prior to *Evans,* in *Seeger v. AFNI, Inc.,* 548 F.3d 1107 (7th Cir. 2008), the Seventh Circuit found that no *bona fide* error exists when interpreting Wisconsin state law regarding adding a collection fee, noting that the defendant did not "consult[] an attorney in Wisconsin on state law issues, nor did it ask a Wisconsin governmental agency whether it was entitled to charge a collection fee as the owner of the debt." *Id.* at 1114.

Furthermore, review or reliance of ACA materials do not provide a debt collector a *bona fide* error defense. *Hale v. AFNI, Inc*., 2010 U.S. Dist. LEXIS 6715 * 28, 2010 WL 380906 (N.D. Ill. Jan. 26, 2010) (noting that the defendant "stated that its procedures involved reviewing legal summaries prepared by the ACA and another trade association, submitting its form letter to the ACA, and reviewing excerpts of the relevant law. Id. [*Seeger* 548 F.3d] at 1114. The Seventh Circuit found these procedures inadequate and stated specifically that [the defendant's] reliance on trade association communications was insufficient to entitle it to the bona fide error defense. Id.").

Notably the ACA materials in part state, "[t]his information is provided only as a guide and is not intended to be, nor is it, legal advice." (Exhibit C, ACA SearchPoint, State Interest Rates, p. 2 (June 30, 2017), and:

> SearchPoint is a trademark of ACA International. Any content contained in this SearchPoint ('Content') is presented for educational and general reference purposes only. ACA International ('ACA') provides this Content as a courtesy to be used for informational purposes only. ACA does not represent or warrant that the Content is accurate, complete or current for any specific or particular purpose or application. This Content is not intended to serve as legal or other advice and should not replace the advice of your own legal counsel. ACA is the sole owner of the Content and all the associated copyrights. ACA hereby grants a limited license to the Content solely in accordance with the copyright policy provided at www.acainternational.org. By using the Content in any way, whether or not authorized, the user assumes all risk and hereby releases ACA from any liability associated with the Content.

(Id., p. 50).

**ii. Bankruptcy (Individual Claim)**

Ignorance of a debtor's bankruptcy is no excuse as "§ 1692e applies even when a false representation was unintentional." *Gearing v. Check Brokerage Corp*., 233 F.3d 469, 472 (7th Cir. 2000) (*citing Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)) (because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)); *see also see In re Madaj*, 149 F.3d 467, 472 (6th Cir. 1998) (debts whether listed in the petition or not are discharged). Furthermore, bankruptcy filings are a matter of public record easily obtained online via PACER, *https://www.pacer.gov*, and in Plaintiff's case, also from the Eastern District of Michigan Bankruptcy Court's[3] ECF system, *https://ecf.mieb.uscourts.gov*, can

---

[3] Oddly, even though bankruptcy is a matter before the federal bankruptcy courts, Rent Recover vaguely stated only after a debtor informs it that the debtor may be filing bankruptcy, that its policy to, "review the account every 30 days ***in the county*** in which the consumer lives to determine whether they have filed for bankruptcy." (Def. Add'l SMF ¶ 39) (emphasis added).

be searched by social security number, which is a unique nine digit number, and name, at a cost of for $0.10 per page.

Plaintiff's debt, the principal amount of which was $529 (five hundred twenty-nine dollars). *See* (Doc. 1-1, Complt. Ex. C, PageID#: 32). It cannot be said as to Plaintiff that Rent Recover did not intend to violate the Act. Indeed, Rent Recover was not concerned at all about violating any bankruptcy court's automatic stay and attempt to collect any discharged debt so long as the amount sought was less than $1,000.

Rent Recover of Better NOI does not conduct a bankruptcy scrub prior to sending out a letter after the completion of the initial bankruptcy scrub, if the amount of the debt is less than $1,000 (one thousand dollars). (SMF Exhibit D, Toache Dep. Tr. 63:20 – 64:10), which in response Rent Recover stated, "Undisputed only for the purposes of deciding Plaintiff's Motion for Summary Judgment." (Def. Resp. to PSMF ¶ 20, PageID #:408); (Exhibit D, Rent Recover Interrogatory Resp. No. 11) ("Bankruptcy scrubs are done first thing when a file is placed with Rent Recover for collection. Files that are over $1,000 are scrubbed again before tax letters are sent."). Therefore, Rent Recover cannot get over the first hurdle of its burden of proof to establish the *bona fide* error that its Act was not intentional. Likewise, setting a $1,000 minimum debt amount to trigger an inquiry before the form tax season letter is sent out is not reasonable and Rent Recover has not offered any evidence to rebut this assertion, especially given the five-month lapse of time between the bankruptcy scrub initially done when the file was placed for collection and the time when the subject collection letter was sent.

Finally, at the time of the violation, January 17, 2017, the date the subject form letter was sent, Rent Recover has not produced any evidence that the landlord had any contractual duty to inform Rent Recover about any bankruptcy as the only contract, the unsigned contract is dated

"12th day of April, 2017" and its oddly unsigned. (Exhibit E). Likewise, Rent Recover's MIDPs do not identify any person with knowledge at Harbor Detroit Square, LLC of this purported April 12, 2017 contract, or any other written contract between Rent Recover and Harbor Detroit Square, LLC. (Exhibit F).

    C. **"Plaintiff failed to mitigate her [sic] damages"**

Rent Recover has not raised a single fact or legal argument to support its third affirmative defense, "Plaintiff failed to mitigate her [sic] damages." Therefore, this Court should grant Plaintiff's motion as to this frivolously raised defense.

### CONCLUSION

WHEREFORE the reasons above and in his opening motion, Plaintiff requests this Court to enter summary judgment in his favor on the: (1) Threshold issues of liability under the FDCPA and MOC; (2) liability under the FDCPA and MOC; (3) enter a class judgment in an amount sum certain on his state law claim under the MOC against Rent Recover of Better NOI, trebled if a willful finding as a matter of law is made; and (4) on the asserted affirmative defenses.

    Respectfully submitted,

    s/ Curtis C. Warner
    Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
350 S. Northwest HWY, Ste. 300
Park Ridge, IL 60068
(847) 701-5290 (TEL)
cwarner@warner.legal